## CITY OF AURORA

### v.

## JOHN C. SEIDELMAN, ADMINISTRATOR, ETC.

*Municipal Corporations—Negligence of—Personal Injuries—Ditch—Death of Child—Responsibility of Parents—Evidence—Instructions.*

In an action against a city for damages for the death of a child, caused by the caving in of a ditch opened by defendant in a public street, this court holds that the evidence was sufficient to support the finding of the jury that the city was negligent, and that the parents of the child were not, negligence not being imputable to the child because of his tender years; that an instruction to the jury on the question of the care required of parents toward such a child, though open to objection, was not fatally erroneous, and that the admission of evidence as to the pecuniary condition of the parents was proper, as throwing light on their ability to watch over, or provide an attendant for the child.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Messrs. HOPKINS, ALDRICH & THATCHER, R. P. GOODWIN and CHAS. I. McNETT, for appellant.

Messrs. CHARLES WHEATON and SAMUEL ALSCHULER, for appellee.

In a series of decisions by the Supreme Court of this State, it has been held that a child of the age of the deceased was too young to be chargeable with negligence. Chicago v. Major, 18 Ill. 349; C. & A. R. R. Co. v. Gregory, 58 Ill. 226; Chicago v. Hesing, 83 Ill. 204; Stafford v. Rubens, 115 Ill. 196; C., St. L. & P. R. R. Co. v. Welsh, 118 Ill. 572.

By the repeated decisions of the Supreme Court in this State, it had been held that parents in humble life are not under any obligations to provide attendants for their children, where the necessity exists for their performing daily labor for the sustenance of their families.    Same cases.

LACEY, J.    This suit was instituted by the appellee against appellant for the purpose of recovering damages caused by the death of Louis Seidelman, deceased, a child about six years of age, to his next of kin.    The appellee, who was the father of the deceased, is his administrator, and brings the suit.    The charge made in the declaration as the ground of recovery is, that the appellant failed to keep its street in a good, safe condition in that city, before the 25th of July, 1888, the day on which the accident occurred which resulted in the death of the boy; that it caused to be dug along Spencer street, one of the streets of the city, a trench or ditch two and a half feet in width, and six feet deep, for the purpose of laying waterpipe, and that after the ditch was dug the appellant wrongfully and negligently suffered it to remain open, uncovered and unfilled, for an unreasonable length of time, etc., after the same should have been filled; that appellant negligently caused a large volume of water to be turned into the same, which had the effect of loosening the sides of the bank, which were straight up and down, rendering the ground of the street very liable to cave in or fill, of which danger the appellant was well aware, and negligently allowed the street to remain in such a dangerous condition, etc.    That appellant

negligently failed to provide sufficient help and appliances to do the work connected with the digging of said trench, and the laying of the waterpipes therein, and in filling and covering the same, and that it negligently failed and omitted to properly guard the said trench and ground on the sides thereof, to prevent injuries and accidents to persons, as it should have done.  The first count then charges that the child, while in the exercise of care and diligence, standing on the street by the side of the trench, fell into said trench by reason of the sudden caving in of the ground, and before he could get out the ground on the opposite side fell in and upon the said Louis, by reason of which he was severely injured, and in consequence of which injuries he afterward, on the next day, died.  The second count charges the same, in substance, though in a more general form.  Upon a trial before a jury the appellant was found guilt and the appellee's damages assessed at $750.

Motion was made by appellant for a new trial, which was overruled by the court and judgment rendered on the verdict, from which judgment this appeal was taken.

The appellant asks the reversal of the judgment on the following grounds:

First.   The evidence wholly fails to support the verdict.

Second.   The court permitted improper evidence to go to the jury on the part of appellee.

Third.   The court erred in giving instructions on the part of appellee.

The alleged want of evidence to support the verdict of the jury is discussed by appellant's attorneys in two different aspects : First, that the appellant exercised due care in doing the work with dispatch, and also in warning the child to keep away from the ditch; and secondly, that the father of the child was negligent in not keeping him away from the ditch, as he knew he was in the habit of going there; but if the father was excusable in not looking after the child with more care than he did, because he was compelled to be away attending to his work from early morning till six o'clock in the evening, that the child's mother, Mrs. Seidelman, should have kept the child away from the ditch.

We are not able to say that the jury were not justified in finding from the evidence that the appellant failed in some portion of its duty, as charged in the declaration, though it does not appear to us to have been an extreme case of negligence on its part. This was a ditch dug along the center line of Spencer street, between Fourth and Fifth avenues, from four and one-half to six and one-half feet deep, eighteen inches wide, with perpendicular banks, and of a length of 979 feet. The ditch was commenced on the 23d of July, being Monday, and was completed, and the pipe laid and tested by five or six o'clock of the 24th day of the same month.

The dirt was thrown out on either side with banks two to three feet high. A roadway was made across the ditch about the center of the line, by throwing the dirt back in the ditch at that point. This roadway at the bottom of the ditch was about sixteen feet wide, and at the top eight feet wide. The appellee was living at the time about midway the length of the ditch, about twenty-five feet south of this roadway over the ditch, on the east side of the street. At the time of the accident the appellee and his wife with the deceased boy and four other children lived in his house, at the point described on Spencer street. Rooms on the second floor of the house were occupied by a woman who was sick and being attended by appellee's wife.

On the 25th of July the dirt was being thrown back into the ditch by one Lorland, with a team and scraper, covering up the pipes. About four or five o'clock on the last named day the deceased, Louis, a child nearly six years of age, went out and went up to the ditch within a foot of the edge, and stood looking into the ditch at a frog in the bottom of the ditch, when the ground underneath him gave way, and he was precipitated into the ditch, and the dirt from the opposite side caved onto him, and so injured him that he soon after died. The street was about forty feet wide, and the ditch came within about fifteen feet on either side of the sidewalk. The street was quite a thoroughfare. At the time of the accident Lorland had only filled up about 200 feet of the ditch. The place where the accident happened was right opposite and

near the gate of appellee, where deceased lived. For the purpose of causing the dirt to more speedily settle in the ditch, so that more of it could be gotten back into it to make a good roadway in the street, water was poured into the ditch from a hose attached to a hydrant opposite to the resident of the deceased. At the time of the accident water stood in the ditch at the place of the accident about a foot deep. The water had been standing in the ditch to that extent all day, being poured in at the hydrant and allowed to run along the ditch to the north. By reason of the water being in the ditch the banks had become softened, so that it would easily cave in. Immediately before the accident an older brother of the deceased, about eight years of age, was standing near the hydrant and was directed by Lorland to partially turn off the water. At that time the deceased was near there, so that he might have been readily seen by Lorland. The latter, as he states, was some 200 feet away from the deceased at the time the accident occurred. It was also plainly visible that the banks of the ditch were caving in in places. It will be seen this ditch, in its then condition, was a very dangerous thing for children, on account of its liability to cave, and their liability to be attracted to it by their childish curiosity. There are few things so likely to excite the curiosity of and attract children as works of this kind. Now, it was a fair question for the jury to say from the evidence whether the appellant should not, in the exercise of ordinary care, have filled the ditch up more speedily, which could easily have been done, or have kept a guard.there, whose duty it should be to keep small children like deceased away from the ditch, or have instructed Lorland so to do. We think the jury were warranted in finding appellant negligent in the manner charged. Nor does the evidence show so conclusively, negligence on the part of the appellee or his wife, or the deceased, as that the finding of the jury in the negative on that point should be disturbed by this court. We are of opinion that it does not. It is not contended by counsel, as we understand it, that any negligence was imputed to the deceased himself. Nor could any, on account of his tender years, be imputed to him. Then

were his parents guilty of negligence in allowing him on the streets while so dangerous a trap as the ditch was there? As to this matter the jury has had all the evidence before it, and we can not say that under all the circumstances their verdict is manifestly wrong, as we should have to do, in order to disturb it. In the first place we think the jury were justified in finding that the knowledge of the parents as to the dangerous condition of the ditch was not as accurate as that of the city, which was doing the work, and that the parents might reasonably rely, to some extent at least, on the city doing its duty in protecting the public from danger. The parents of the deceased were laboring people in moderate circumstances and obliged to be attending to their daily labor. The appellee was actually away from home attending to his labor, and the mother at home with her household duties, and a number of small children to look after, and also a sick woman upstairs. The jury, as we think, were justified in giving facts like these some weight; and, weighing all the circumstances of the case, on the question of the negligence of those having charge of the deceased, we are unable to say that the finding of the jury was manifestly wrong. It is not, as a matter of law, negligence *per se* for parents to allow their small children to go on the streets unattended. It, like most other questions of fact to be found by a jury, depends on the circumstances. Upon the whole we think there is not that want of evidence to support the verdict of the jury on the issues presented that would warrant this court in setting it aside.

It is objected by counsel for appellant that the court allowed the appellee to make certain proof of his pecuniary circumstances, his means of support besides his labor, whether he was pecuniarily able to employ any one, whether he had built a house and paid for it, and the like, assuming that the purpose was to excite, unjustly, the sympathies of the jury. We do not think, under the circumstances, that this was erroneous. The case of Moranda, 93 Ill. 302, and other like cases cited, are not in point. The object in making this proof was to show that appellee was unable, from his pecuniary circumstances, to have any one to help him and his wife to keep a

more vigilant watch over his children, and to some extent excuse them from the charge of negligence in respect to the care of deceased, being made against them by appellant. This, we think, he might properly do in accordance with the ruling of the Supreme Court in several cases. City of Chicago v. Major, 18 Ill. 49; C. & A. R. R. Co. v. Gregory, 58 Ill. 226; Chicago v. Hesing, 83 Ill. 204; Stafford v. Rubens, 115 Ill. 196; C., St. L. & P. R. R. Co. v. Welch, 118 Ill. 572. Where there is no question involved in the case that would make the evidence complained of proper, it certainly would be error to introduce it. But we think in this case the evidence was proper to be considered by the jury.

The next question the appellant raises is, as to the correctness of appellee's instructions. And, first, it is complained that the first instruction does not confine the damages to actual damages. As to this we do not think the point is well taken. In the first place there is no assignment of error, or even contention that the damages are excessive. In fact they are very moderate. Secondly, the question of the measure of damages was not prominently brought out in that instruction, but was so done in appellee's eighth instruction, which fully explained that the damages must be confined to pecuniary loss, and the appellant's instructions were full and explicit on that subject. We think there was no danger of the jury being misled by it. In regard to objections to the appellee's second, third, fourth and fifth instructions, we have only to say that we have examined them carefully, and do not find in them anything that would be likely to mislead the jury in reference to the points raised. That while they might have been more accurately and guardedly drawn, we think the inferences sought to be drawn from them as to the likelihood of the jury being misled in the directions named, are far-fetched and very unlikely—and we are inclined to think the instructions are not calculated to mislead the jury, and more especially as the jury was so fully instructed by the appellant's instruction. When the series were taken together they were no more than fair. As no negligence, as a matter of fact, ought to be attributed to this young child under the cir-

cumstances, it would be no reversible error to so instruct the jury, though it might not be strictly proper to so rule as a matter of law.

The next instruction, the sixth, probably comes nearer being fatally erroneous than any of those complained of. It is as follows:

"Sixth. The jury is instructed that the same rule of negligence should not be applied to persons dependent upon their labor for support, as to those persons whose means enable the parents to give a constant, personal attention to the care of their children, or to employ a person for that purpose. If, therefore, the jury believe from the evidence that the plaintiff, the father of the deceased, was at the time of the alleged injury a laboring man, and had to be constantly employed as such in earning a livelihood for his family, and at the time of the said accident he was away from home, at a distance, engaged in his daily work, and that the mother of the said child had to be, at that time, employed in the domestic affairs of her household, and that the means of the said parents did not enable them to give constant, personal attention to the care of their children, or to employ a person for that purpose, then the law does not require that persons in their station in life shall keep a constant watch over their children, nor can the want of such care be imputed to them as negligent conduct."

The appellant's criticism on this instruction is, that it does not describe the measure of care that would devolve on appellee and his wife with reference to the circumstances of the case. The instruction, after reciting that in case a certain degree of poverty existed, certain personal duties devolved on appellee and his wife, proceeds to tell the jury that " then the law would not require them to keep a constant watch over their children, nor the want of such care be imputed to them as negligent conduct." This ordinarily may be true, as held in Stafford v. Rubens, 115 Ill. 196, and cases there cited, and Chicago v. Hesing, 83 Ill. 204.

But we can conceive of circumstances where, in despite of all the recited conditions, ordinary care would require the par-

City of Aurora v. Seidelman.

ents to "keep a constant watch over their children," especially those of tender age. If the danger to be apprehended or harm to the child was imminent unless a strict watch were not kept, and the parents knew it, common prudence would require them to keep a strict watch, or remove the child from the scene of the danger, and the more imminent the danger the greater the care required. They would be compelled to use such care as people ordinarily would in their condition and circumstances. The Supreme Court in the above cases were discussing negligence as matter of fact and not of law. It is impossible to say that the rule announced in those cases when applied universally would be correct. It was a good rule to measure negligence or the want of it in those cases, no doubt, as applied to all the circumstances. This proves to us that negligence, or the want of it, is not a question of law, but of fact. The law is, that due care is that degree of care which an ordinarily prudent person would exercise under the circumstances of each particular case; and that it is a flexible rule, and the vigilance required would vary with circumstances. In cases where persons are poor and their time constantly employed in making a living, such circumstances should be taken into account, and the same vigilance should not be required of them in respect to the care of their children as would be of rich people, who had plenty of leisure and means to employ servants; yet they must use such care as reasonable persons would do in their condition and surrounded by the same circumstances. The mistake of the instruction is that it undertakes to formulate certain circumstances of fact into a rule of law, without reference to other circumstances, that might modify the rule very materially. But the question still arises here, are the circumstances of this case so variant from the circumstances of the two cases referred to in 115 Ill. and 83 Ill. and other like cases, as to require reversal of the judgment? We are inclined to think, in view of what is said in the above cases, that the circumstances of this case, considering the condition and circumstances of the parents, and also all the facts concerning the ditch and its surroundings, would not require the parents to "keep a constant watch over their children," as

the instruction reads. The instruction does not preclude the condition that appellee and his wife should use reasonable care in watching over their children, but as we think, in substance, it invades the province of the jury to the extent of instructing it that reasonable care, under the circumstances of the case, if the hypothesis of the instruction was believed, would not require that they should " keep a constant watch over their children." It were better not to give such an instruction, but leave the jury in all cases to find whether reasonable care required such constant watch.

But other instructions direct the jury, as condition of recovery by appellee, to find that the parents were in the exercise of ordinary care, and this coupled with the sixth instruction would leave the jury at full liberty to find whether appellee and his wife used due care, hampered only by the injunction that the latter, in order to be within such rule, need not "keep constant watch of their children." We think, clearly, under the circumstances in evidence in the case, to require appellee and wife to "keep constant watch of their children," would have been to compel them to observe extreme caution, a degree not required by the law. Therefore we are fully satisfied the jury was not misled by the instruction, to appellant's injury.

The seventh instruction was not erroneous, as we think. The appellant has not pointed out wherein the court erred in refusing to give certain instructions asked for by it, the refusing of which is assigned for error. And we will not undertake to discover such errors ourselves. We will presume there are none, or they would have been pointed out. Seeing no error in the record of sufficient importance to reverse, the judgment is affirmed.

*Judgment affirmed.*